**Opinion filed March 27, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00299-CV
_____

# IN THE INTEREST OF L.J.H., C.B.B., AND T.L.H., CHILDREN

### On Appeal from the 29th District Court
### Palo Pinto County, Texas
### Trial Court Cause No. C45021

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of the parents of L.J.H., C.B.B., and T.L.H.  The mother timely filed an appeal.[1]  In a single issue on appeal, she challenges the sufficiency of the evidence to support termination. We affirm.

### I. *Termination Standards*

The termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013).  To

---

[1]Neither the father of L.J.H. nor the unknown fathers of C.B.B. and T.L.H. filed an appeal.

determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

## II. *Findings and Evidence*

In this case, the trial court found that the mother had committed one of the acts listed in Section 161.001(1)—that found in subsection (D). Specifically, the trial court found that the mother had placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being. The trial court also found, pursuant to Section 161.001(2), that termination of the mother's parental rights would be in the best interest of the children. In her brief, the mother does not challenge the sufficiency of the evidence to support the best interest finding.

The record shows that, in October 2012, the Texas Department of Family and Protective Services received an intake regarding the neglect of the children due to the unsanitary and hazardous conditions of the home where they resided with their mother and her boyfriend. The intake also involved possible substance abuse. Jeremy Henard, an investigator for the Department, visited the home after speaking to two of the children at school. Henard observed numerous hazards outside the mother's home, including the following: broken bottles, stripped wires, dead

2

animals' carcasses, roaches on the front porch, and rotting bowls of food. Inside the home, Henard observed, "Every surface of the home was covered with filth, a severe infestation of insects, roaches, animal feces on every floor in every room." According to Henard, the smell of animal feces and animal urine was overpowering. The children's rooms were in the same deplorable condition as the rest of the house. There was trash throughout the house. In the bathroom, Henard observed used toilet paper, diapers, and other products piled on the floor. On that date, the mother was given a drug test, which came back positive; she admitted that she used methamphetamine and had a $40-per-week habit. The children were removed from the home at that time.

The mother had a history with the Department, and the children had been removed from her care in the past. The children had been in and out of foster care since 2009. The Department's conservatorship caseworker testified that the mother completed her services while this case was pending but that this was the third time that she had completed services. The mother had been offered services at the time of the previous removals, and within months of the children being returned to the mother, the condition of the home had deteriorated. According to the caseworker, the condition of the house at the time of the most recent removal "was the worst that it's ever been."

At the time of the final hearing in this case, the children were placed in an adoptive placement. The caseworker believed that the children needed permanency and deserved a home that was safe, stable, and free of filth. The mother's home was suitable on the date of the final hearing. However, despite the Department's past efforts, the mother had demonstrated an inability to maintain the home for a prolonged period of time.

### III. *Analysis and Conclusion*

We hold that there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the mother had placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being. FAM. § 161.001(1)(D). Under subsection (D), we examine evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied). The Department produced clear and convincing evidence that the condition of the mother's home was deplorable and hazardous to the children. Pictures of the home were admitted into evidence. Based on the record in this case, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(D). The mother's sole issue on appeal is overruled.

### IV. *This Court's Ruling*

We affirm the trial court's order of termination.

MIKE WILLSON

JUSTICE

March 27, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.